OPINION.
{¶ 1} This appeal is taken from a final judgment of the Portage County Court of Common Pleas, Domestic Relations Division. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} Appellant, Viola E. Boyles, and appellee, Stephen R. Boyles, were married on August 24, 1985. On October 12, 1999, the trial court issued a judgment entry granting the parties a divorce. As part of the property distribution, the trial court awarded the Brookdale, Summers, and Garrett properties to appellee as his separate property.
 {¶ 3} Appellant filed an appeal of the trial court's judgment with this court. Among her assignments of error, appellant challenged the trial court's characterization of the Brookdale, Summers, and Garret properties as appellee's separate property. She argued that during the marriage the parties had jointly encumbered the properties through subsequent mortgages and that because of this the properties should now be considered marital assets and subjected to an equitable division.
 {¶ 4} After reviewing the record, this court concluded that appellee acquired the Brookdale and Garrett properties prior to the marriage and that he obtained the Summers property during the marriage. However, appellee had failed to provide evidence on whether the subsequent mortgages on those properties were used to finance those properties, or whether the mortgage payments were made with his separate funds as opposed to marital funds. Boyles v. Boyles (Oct. 5, 2001), 11th Dist. No. 2000-P-0072, 2001 WL 1182883, at 7. Accordingly, we affirmed the trial court's judgment in part, reversed it in part, and remanded the matter with instructions for the trial court to examine the record and determine if the parties presented credible evidence on the question of what portion, if any, of the three properties should be considered appellee's separate property.
 {¶ 5} On remand, both parties filed written arguments in support of their respective positions. Ultimately, the trial court concluded that appellant was entitled to receive a total of $38,967 as her share of the martial portion of the properties. Specifically, the court found that appellant purchased the Garrett property in 1979 for $80,000. In 1987, the parties executed a mortgage on the property, which then had a fair market value of $95,000, for $64,102. The trial court further found that at the time of the parties' divorce, the mortgage had been reduced to $19,700 and that the fair market value of the property had increased to $124,000. Therefore, the equity in the property at the time of the divorce was $104,300.
 {¶ 6} The trial court then calculated the appreciation on the portion representing appellee's separate property, $31,000, the difference between the fair market value in 1987 and the mortgage, by multiplying that figure by a 6 percent yearly growth rate. This gave the court an annual return of $1,860, which the court then multiplied by twelve years, i.e. 1987 to 1999, giving a final figure of $22,320. The trial court then added this number to the previously determined value of appellee's separate property interest for a total of $53,320.
 {¶ 7} Finally, the court subtracted the value of appellee's separate property from the net equity in the property at the time of the divorce. This left $50,980 in marital equity, of which appellant was entitled to one-half, or $25,490.
 {¶ 8} With respect to the Summers property, the trial court found that appellant had purchased the property in 1983. At the time the parties, married the property had a fair market value of $50,000, while at the time of their divorce it was worth $75,000. In 1993, the parties borrowed $29,800 and secured the loan with a mortgage on the property.
 {¶ 9} The trial court subtracted the amount of the mortgage from the property's fair market value at the time the parties married, leaving $20,200 as appellee's separate property. The court multiplied $20,200 by the 6 percent annual growth rate and determined that appellee should receive an additional $1,200 per year from the time of the refinancing until the divorce, or $6,000.
 {¶ 10} After adding $6,000 to $20,200, the trial court then subtracted that figure from the net equity remaining in the property, which was $52,513. This gave the trial court a value of $26,313 as the martial portion of the property. Of that amount, the court awarded appellant $13,156.50.
 {¶ 11} As for the Brookdale property, the trial court first found that appellant had conceded that it was appellee's separate property. Accordingly, the court concluded that she was only entitled to her share of the increased value. The trial court determined this by taking the property's fair market value at the time of the divorce, $70,000, and subtracting from that two outstanding debts related to the property totaling $20,359. The fair market value of the property at the time the parties married, $50,000, was then subtracted from the remaining $50,641, leaving $641 in increased value, to which appellant was entitled to one-half.
 {¶ 12} From this decision, appellant filed a timely notice of appeal with this court. She now submits the following assignments of error for our consideration:
 {¶ 13} "[1.] The trial court erred in finding that appellee met his burden of proof respecting the tracing of his separate property claim to a portion of the parties' marital property.
 {¶ 14} "[2.] The trial court erred in awarding appellee, as investment return upon his separate property, a portion of the increased equity in the property which was indistinguishable from the increased equity attributable to the labor or monetary contributions to the property by either spouse during the term of the marriage."
 {¶ 15} Both of appellant's assignments of error concern the trial court's decision to treat, in part, the Brookdale, Summers, and Garrett properties as appellee's separate property. For ease of discussion, therefore, we will consider them together.
 {¶ 16} Appellant first argues that there was no evidence to support the trial court's findings concerning the fair market value of the properties at the time the parties were married. We disagree.
 {¶ 17} Upon granting a divorce, the trial court is required to divide and distribute the marital estate between the parties in an equitable manner. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 130. In doing so, the trial court is necessarily vested with wide discretion in formulating an equitable distribution of such property. Id. at 130;Berish v. Berish (1982), 69 Ohio St.2d 318, 319. As a result, the trial court's division of marital property will not be disturbed on appeal unless the court abused its discretion. Booth v. Booth (1989),44 Ohio St.3d 142, 144. An abuse of discretion connotes more than a mere error of law or judgment; rather, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 18} The trial court's characterization of property as either marital or separate necessarily involves a factual inquiry under a manifest weight of the evidence standard. Barkley v. Barkley (1997), 119 Ohio Ap.3d 155, 159. An appellate court will not reweigh the evidence, but instead will uphold the findings of the trial court when the record contains some competent and credible evidence to support the court's conclusions. Polakoff v. Polakoff (Aug. 4, 2000), 11th Dist. No. 98-T-0163, 2000 WL 1121799, at 3.
 {¶ 19} Marital property is defined in R.C. 3105.171(A)(3)(a) as including:
 {¶ 20} "(i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
 {¶ 21} "(ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
 {¶ 22} "(iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage;
 {¶ 23} "* * *
 {¶ 24} Separate property, on the other hand, is defined by R.C.3105.171(A)(6)(a) to include:
 {¶ 25} "* * *
 {¶ 26} "(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;
 {¶ 27} "(iii) Passive income and appreciation acquired from separate property to one spouse during the marriage;
 {¶ 28} "* * *
 {¶ 29} "(vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse."
 {¶ 30} Appellant essentially argues that the trial court erred in relying on appellee's estimate of the properties' fair market value at the time of their marriage in determining appellee's separate property interest. She submits that not only is such testimony insufficient to establish fair market value, but appellant also claims that the other evidence in the record contradicts appellee's testimony.
 {¶ 31} After reviewing the record, we conclude that the trial court did not abuse its discretion in using appellee's testimony to establish the fair market value of the properties. Generally speaking, "before one may testify as to his opinion on the value of property, one must qualify as an expert." Tokles Son, Inc. v. MidwesternIndemn. Co. (1992), 65 Ohio St.3d 621, paragraph one of the syllabus. However, "[a]s an exception to the general rule, an owner is permitted to testify concerning the value of his property without being qualified as an expert, because he is presumed to be familiar with it from having purchased or dealt with it." Id. at paragraph two of the syllabus. See, also, Kearney v. Crown (Aug. 12, 1994), 11th Dist. No. 93-T-4945, 1994 WL 587382, at 2 (holding that "Ohio courts have long recognized the `owner-opinion rule' which allows the owner of real estate or real property to estimate the value of such property since the owner is assumed to possess sufficient knowledge of its value."). And although expert testimony is always welcome, it is not required to establish the value of real property. Kidon v. Kidon (Dec. 23, 1999), 11th Dist. No. 98-G-2162, 1999 WL 1313615, at 6.
 {¶ 32} Here, appellee, who is a licensed real estate broker, gave an opinion as to a specific value for each of the three pieces of property. Appellant, however, neither presented her own evidence to counter appellee's testimony, nor gave her own opinion on the properties' fair market values. As a result, she cannot now complain that appellee's testimony was lacking. Id. (holding that because the husband failed to exercise his opportunity to submit his own testimony concerning the value of real property "he cannot now complain that the testimony of [the wife] was insufficient."). Moreover, while there is some conflicting evidence in the record, the trial court was in the best position to consider all of the evidence and assess its credibility before making a determination. See, e.g., Kainrad v. Kainrad (May 24, 2002), 11th Dist. No. 01 PA 00021, 2002 WL 1049704, at 2. So long as there is some competent, credible evidence to support the trial court's assessment we will not disturb it on appeal.
 {¶ 33} Appellant also contends that trial court's method of establishing the value of appellee's separate property interest was flawed because it failed to consider "[t]he actual appreciation which developed following transmutation[.]" She further maintains that even if the properties in question were appellee's separate property at one time, they became marital property when the parties subsequently executed mortgages using the properties as collateral.
 {¶ 34} In making this argument, appellant relies on the doctrine of transmutation, which "is the process by which property that would otherwise be separate is converted into marital property." Frederick v.Frederick (Mar. 31, 2000), 11th Dist. No. 98-P-0071, 2000 WL 522170, at 10. Transmutation, however, is no longer the primary means of determining whether property that was at one time separate has been converted into a marital asset. Rather, because "the commingling of separate property with marital property will not destroy the identity of the separate property if that property remains traceable[,]" Price v.Price (Jan. 25, 2002), 11th Dist. No. 2000-G-2320, 2002 WL 99534, at 4, the trial court should first determine whether the party making a separate party claim adequately traced "its origin as a discrete, separate property to its current status[.]" Needles v. Needles, 11th Dist. No. 2001-G-2386, 2002-Ohio-7128, at ¶ 10.
 {¶ 35} The trial court addressed the traceability of appellee's separate property claim and found that he had purchased all three properties before the parties' marriage. Although there is no dispute with respect to either the Garrett or Brookdale properties, we noted in our earlier opinion that appellee acquired title to the Summers property after the marriage. Nevertheless, although a trial court must "assume that any property acquired during the marriage is marital," a spouse may present evidence to rebut that presumption. Price at 5. The burden of proving, by clear and convincing evidence, that after acquired property is separate under R.C. 3105.171 is upon the proponent of the claim. Peck v.Peck (1994), 96 Ohio App.3d 731, 734; Frederick at 6. Accordingly, we must determine whether appellee presented competent, credible evidence establishing that the Summers property was his separate property and not a marital asset.
 {¶ 36} The record shows that appellee originally purchased the Summers property in November 1980. In 1983, appellee transferred the property to his father because his father was able to obtain a better interest rate. Then, in 1987, appellee's father transferred the property back to appellee, after which, in 1993, the parties executed a joint mortgage secured by the property.
 {¶ 37} Based on this evidence, we cannot say that the trial court abused its discretion in finding that the Summers property was appellee's separate property. Even though appellee did not obtain title to the property for the final time until after he and appellant were married, and there is a presumption "that any property acquired during the marriage is marital," there is no doubt that appellee's father intended to give the Summers property to appellee alone and not to both him and his wife. The deed to the property only lists appellee as the owner. Gallo v. Gallo, 11th Dist. No. 2000-L-208, 2002-Ohio-2815, at ¶ 25 (holding that although not dispositive, title can be evidence of the parties' intent concerning whether property is marital or separate). Moreover, the transactions, the validity of which appellant does not dispute, leading up to the 1987 transfer suggest that appellee never intended to completely relinquish his interest in the property. More importantly, appellant never claimed that appellee's father intended to give the Summers property to her and appellee as husband and wife. Therefore, the trial court did not abuse its discretion in finding, by clear and convincing evidence, that the Summers property was appellant's separate property.
 {¶ 38} We also conclude that the trial court did not abuse its discretion in using its chosen method of assessing the value of appellee's separate property interest. In order to make an equitable property division, the trial court is vested with broad discretion. Therefore, when determining the value of property, a court "is not required to use a particular method of valuation." Keresztesi v.Keresztesi (Dec. 14, 2000), 8th Dist. No. 76648, 2000 WL 1844779, at 6. See, also, Boyles at 4, quoting James v. James (1995), 101 Ohio App.3d 668,681 ("`Our task on appeal is not to require the adoption of any particular method of valuation, but to determine whether, based on all the relevant facts and circumstances, the court abused its discretion in arriving at a value.'").
 {¶ 39} In the case at bar, the trial court considered such things as the fair market value of the properties at the time of marriage and at the time of divorce, any outstanding mortgage balances, and the original purchase price. Appellant, while now complaining that this method was inadequate, never offered an alternative. She simply asked the trial court to treat the properties entirely as marital assets. If appellant wanted the trial court to use a different method, she should have presented relevant evidence to support her desired result. Having failed to do so, appellant cannot now argue that the trial court acted improperly. Snyder v. Snyder (Dec. 22, 2000), 11th Dist. No. 99-G-2230, 2000 WL 1876614, at 10.
 {¶ 40} Finally, appellant takes issue with trial court's decision to grant appellee the appreciation of the properties' values as his separate property. She contends that any increase in value was the result of appellant's efforts in managing the properties and her own labor in decorating the Brookdale property shortly after the parties were married.
 {¶ 41} "Under R.C. 3105.171, an increase in the value of separate property due to either spouse's efforts is marital property." Middendorfv. Middendorf, 82 Ohio St.3d 397, syllabus. Nevertheless, appreciation that results from an increase in the fair market value of separate property due to its location or inflation is considered passive income, which is considered separate property. R.C. 3105.171(A)(6)(a); Polakoff
at 4.
 {¶ 42} There was absolutely no evidence introduced in the record showing that the increased value of the properties was anything other than passive appreciation. See, generally, Fergus v. Fergus (1997),117 Ohio App.3d 432, 440 (holding that the record did not reveal that significant marital funds and labor were expended to improve and maintain the property). The fact that appellee "managed" his properties during the marriage is simply not enough to convert an increase in their value to marital property. Furthermore, neither appellant nor appellee testified that they engaged in any renovation or remodeling that would increase the properties' values. The act of putting up wallpaper and other minor decorating, without more, does not support a claim that the increased fair market value should be considered marital. As a result, the trial court did not abuse its discretion in awarding appellee the appreciation as separate property.
 {¶ 43} As for the method used by the trial court to determine the value of the appreciation, appellee suggested that the court use a 6 percent annual growth rate. Appellant, however, offered no alternative, and as noted earlier, if she wanted the trial court to value the appreciation differently she was obligated to present relevant testimony and evidence in support of her desired result. Snyder at 10. Therefore, absent any indication that the trial court's decision was arbitrary or capricious, she cannot now argue that the trial court abused its discretion in using 6 percent as an estimate of the annual increased appreciation.
 {¶ 44} In light of the foregoing analysis, appellant's two assignments of error, have no merit. The judgment of the trial court is affirmed.
Judgment affirmed.
WILLIAM M. O'NEILL and CYNTHIA WESTCOTT RICE, JJ., concur.